OKC REFINING COMPANY, INC., and
Highlands Insurance Company,
Petitioners,

v.

Pauline H. GOLD, Surviving Spouse of
Clinton D. Gold, Jr., Deceased, and
Workers' Compensation Court, Respondents.

No. 60912.

Supreme Court of Oklahoma.

May 28, 1985.

Rehearing Denied July 16, 1985.

John B. Ballard II, Oklahoma City, for petitioners.

Gloyd L. McCoy, Ben A. Goff, Inc., Oklahoma City, for respondents.

ALMA WILSON, Justice.

In 1974, Clinton Gold filed a worker's compensation claim alleging that he sustained a heart injury on April 14, 1973, while in the course and scope of his employment. Gold's employer, OKC Refining Company, denied the claim, but entered into a Joint Petition[1] settlement of the issues in this case, pursuant to the rules of the Workers' Compensation Court.

---

1. Joint Petition (Form 14) of the Workers' Compensation Court has been designated by that court as an *"Agreement between Employer and* *Employee as to Fact with Relation to an Injury and Payment of Compensation"*. 85 O.S.1981 Ch. 4, App.Rule 11.

The pertinent rule of the Workers' Compensation Court governing joint petition settlements provides:

> *Rule 27. Joint Petition Settlements*
>
> No joint petition settlement of a claim shall be approved by the court unless a record of the terms and conditions of the settlement is made and transcribed. The expense therefor shall be the obligation of the respondent.
>
> No settlement of a claim shall be made upon written interrogatory or deposition except in cases where the claimant is currently engaged in the military service of the United States, is outside of the state, is a nonresident of the State of Oklahoma, or in cases of extreme circumstances. In such cases, a joint petition settlement may be approved upon written interrogatory or deposition only where application is first made and approved by the court.
>
> *No joint petition settlement may be presented until competent medical evidence is ready for admission.*
>
> The transcript of the joint petition settlement will be prepared and mailed within ninety (90) days of the hearing. If any respondent or insurance carrier prefers to be billed immediately for the transcript, it may request the court reporter to determine the charge at the time the record is made. The court reporter may then contract for his services and submit his statement in conformity with the agreement.
>
> *Medical reports and other exhibits submitted in support of a joint petition settlement* will not be transcribed unless the parties request otherwise. When said reports or exhibits are not transcribed, the original exhibits or duplicate copies thereof shall be affixed to the original transcript and placed in the court file. [Emphasis ours]

Gold's Form 3 claim was regularly docketed for trial on April 8, 1974. However, after the case was called on that date, but before the Court commenced hearing, the employer and insurance carrier made an offer of settlement which Gold accepted. Hearing was then conducted pursuant to the parties' joint petition. At this hearing, Gold acknowledged the terms and conditions of the compromise agreement submitted for approval and final order by the Workers' Compensation Court. In pertinent part, the agreement stated:

> "Claimant hereby agrees to accept in settlement of all claims against the respondent and insurance carrier the sum of $12,500.00, and agrees that this is in full settlement of all claims *for statutory medical aid and for compensation,* including compensation for temporary disability, permanent disability, permanent disfigurement, or loss of wage earning capacity *which claimant now has or may hereafter have as a result of said injury.*" [Emphasis added]

On examination, Gold responded affirmatively to counsel's question, "Under the evidence [the trial judge] could enter an order which could be for total permanent disability, which amounts to twenty-five thousand dollars, under the law, on the other hand he could decide that your condition was not caused or aggravated in anyway by your employment at the company and denie [sic] your claim altoghether [sic], you understand that, do you not?" Gold further acknowledged that this was not an admission on the part of OKC Refining Company; but maintained that the condition for which he sought compensation was caused by work performed in the course of employment with this company. In support of this claim, the medical report of Gold's examining physician, Dr. P., was tendered into evidence without objection. Gold testified that at the time Dr. P. examined him, he gave the doctor a history of what happened to him on the job; that he had seen the written report; and that it correctly reflected that history.

The history given by Gold disclosed that he had been employed by OKC Refining Company as a power plant operator for approximately 31 years prior to the asserted injury of April 14, 1973. Gold's medical history further revealed that in October of

1969, he sustained a heart attack following a surgical procedure on his elbow. Three months thereafter, Gold resumed his work at OKC Refining Company without further incident until November 29, 1972. On that date, as Gold was carrying a 100-pound sack of soda ash to a treating tank, he allegedly sustained a double hernia and heart strain. Surgery was performed on December 29, 1972 to repair both hernias. The company doctor, Dr. A., released Gold to return to work on April 8, 1973. Upon his return to work Gold was furnished a helper for a few days and work was light. However, on April 14, 1973, Gold worked without a helper. On that date, Gold alleged that it became necessary for him to blow out three boilers. This involved turning a large wheel which Gold stated was very strenuous work. As he was working on the second boiler, Gold related that he experienced severe pain in the substernal portion of his chest, with shortness of breath, weakness and nausea which rendered him unable to work. Gold purportedly continued to suffer these symptoms and was admitted to the hospital the following day where he was confined in intensive care for three days and in the coronary care unit for sixteen days. Thereafter, Gold was never able to return to work and upon medical advisement he was officially retired in October 1973.

After conducting x-ray and laboratory studies, Dr. P. reported findings which he characterized as indicative of a posterior wall myocardial infarction. In Dr. P.'s opinion, Gold's injury on the job on November 29, 1972, had aggravated his previous heart condition; and that by reason of that injury and his re-injury on the job on April 14, 1973, Gold became totally and permanently disabled for the purpose of performing ordinary manual labor. Dr. P. further concluded that it would be necessary for Gold to undergo medical treatment for the remainder of his life.

The Workers' Compensation Court also admitted into evidence on behalf of OKC Refining Company and its insurer the medical reports of Dr. A. and Dr. K. at the joint petition hearing. These reports are in direct conflict with that of Dr. P. The company doctor, Dr. A., reported that he found no indication that Gold's strain of November 29, 1972 caused his heart problem, but made no statement concerning any injury on April 14, 1973. Dr. A. concluded that "As far as Mr. Gold's heart condition is concerned, he is suffering from a heart disease and his work at OKC Refining, Inc., did not cause or aggravate this disease."

Dr. K., the attending physician at the hospital at the time of Gold's admission in April 1973, reported that "Since April 14, 1973, Mr. Gold has been treated with coronary dilators and anti-coagulants. Effort of mild nature produces irregularity of heart. He cannot walk longer than 10 blocks—this yields angina and tiredness. He is also receiving digitalis. Classification of heart disease is 3D. His history does not include any job related associations." However, in a second medical statement admitted as an exhibit, Dr. K. answered pertinent inquiry as follows:

### ATTENDING PHYSICIAN'S STATEMENT

1. Diagnosis and Concurrent Conditions (If diagnosis code other than ICDA used, give name: *Peripheral Vascular Disease*

    .    .    .    .    .

2. Is condition due to injury or sickness arising out of patient's employment? *Yes*

8. Patient was continuously totally disabled (unable to work) From *4–15–73* thru *Present*

    .    .    .    .    .

At the conclusion of the hearing, the trial judge of the Workers' Compensation Court announced that the joint petition would be approved. In its order approving the joint petition upon which the Court based Gold's compensation award against OKC Refining Company, the Court stated that:

"... *having reviewed the evidence, the files and records* in said cause and being

fully advised in the premises, finds that the above *joint petition*, incorporated herein and made a part hereof by reference, should be and is hereby *approved.*

IT IS THEREFORE ORDERED, that within 20 days from the filing date of this order respondent or insurance carrier file with the Court proper receipt evidencing compliance herewith whereupon *this cause* shall be fully and finally closed and *adjudicated,* and the Court divested of further jurisdiction herein." [Emphasis ours]

Clinton Gold died on June 25, 1982. His widow filed a separate claim in her own behalf for death benefits provided by the Workers Compensation Act. The widow alleged that her husband died of myocardial infarction and this his demise thereby was causally connected to a previously adjudicated work related heart attack on April 14, 1973. After a hearing on the widow's cause, the Workers' Compensation Court entered an order finding that on April 14, 1973, the deceased, Clinton D. Gold, Jr., sustained an accidental personal injury arising out of and in the course of deceased's employment; and that by reason of the death of Clinton D. Gold, Jr., as a result of the injury sustained on April 14, 1973, the respondent herein is liable for payment of the death benefits provided by law in such cases. Accordingly, the court awarded the widow survivor's benefits. Gold's former employer and its insurance company appealed the order. The Court of Appeals, Division No. 2, reversed the Workers' Compensation Court's award of benefits to the widow on the ground that the fact of either a heart attack or any other compensable heart injury allegedly sustained by Gold on April 14, 1973 is unsupported by competent medical evidence. We now review, by certiorari, the opinion of the Court of Appeals.

Unless we were to reverse *Black, Sivalls & Bryson v. Bass,* 506 P.2d 902 (Okl.1973), which we decline to do, the opinion of the Court of Appeals must be vacated. In *Black* this Court stated:

[W]e are of the opinion the joint petition settlement is no different from any final award of State Industrial Court. This was settled in the early case of *St. Joseph Mining Co. v. Pettitt,* (1923), 90 Okl. 242, 216 P. 657, involving whether a statutory settlement was a release of liability cancellable only for fraud. The court held agreement (joint petition settlement) under terms of statute constituted agreement as to facts relating to injury. Where made and approved by Industrial Court, settlement constitutes basis for an award. The statute provides the agreement as to facts with relation to injury shall be binding upon parties. We hold a joint petition settlement after evidentiary hearing constituted a judicial determination of facts upon which the award was based.

It thus does not follow that issues effectively adjudicated to final award in a prior cause may be collaterally attacked in a subsequent workers' compensation proceeding where the gravamen is the same injury occurring in the same manner. The order on joint petition precludes the employer from relitigating the compensability issue of Gold's heart injury occurring on April 14, 1973. In the prior claim, both the employer and claimant had every opportunity to fully and fairly litigate to a final order on the merits the issue of job related injury which the employer now seeks to disprove. Having had his day in court, this employer is precluded by the final order in that cause to reopen the precise question which it declined to litigate in the prior action when all concerned had complete opportunity to ascertain and develop all relevant facts and to frame the issues. We are consequently prevented from reaching that question, not because it was actually decided in the first cause, but because the order is a final adjudication of not only what was actually in issue but what might have been in issue had either of the parties so desired.

■ The sole issue open for litigation in the widow's claim for survivor's benefits was whether the widow has shown a causal connection between her late husband's

April 14, 1973 injury and his subsequent death, by competent evidence. Having read the record and applicable law, we find the medical testimony of the widow's medical expert, Dr. E., constitutes competent medical evidence to support the Workers' Compensation Court's award.

In *City of Oklahoma v. Lindsey*, 549 P.2d 81 (Okl.1976), we defined competent medical evidence in the following manner:

We have defined "competent evidence" as evidence which is relevant and material to the issue to be determined. *Joseph H. Coy Co., Inc. v. Younger*, 192 Okl. 348, 136 P.2d 890 [1943]. In this decision it was contended the evidence was inconsistent and contradictory and insufficient to satisfy the rule requiring findings of fact to be supported by competent evidence. The decision noted evidence to cause and extent of disability was contradictory, inconsistent and conflicting in some respects, but was relevant and material to the issue to be determined and therefore competent.

We have recognized the rule that the medical expert witness must assume a set of facts substantially as supported by the testimony before the opinion is competent evidence to support a finding of the State Industrial Commission.

In the present case, Dr. E. identified the evidence he relied upon in making his determination as the decedent's own testimony in the previous adjudication of injury and the medical reports of record, including the decedent's medical history, medical tests performed and their results, and various analysis of the nature of decedent's condition after April 14, 1973 and the cause of death. Based thereon, Dr. E. concluded:

Q. *"After reviewing these records,* did you come to any conclusion as to causal relationship between Mr. Gold's death and the industrial injuries which were settled by Joint Petition?"

A. "Yes sir, I did."

Q. "Involving accident dates of April 14, 1973 and November 29, 1972?"

A. "That's correct."

Q. "What was your opinion?"

A. "I felt that the injury of November 29, 1972 and the subsequent hernia repair and the upper respiratory infection, possible pulmonary embolus aggravated his heart condition. The April 14, 1973 stress and strain, working in the boiler precipitated a myocardial infarction. Subsequent records show that he had poor mobility in his heart and I think that was secondary to the myocardial infarction on April 14th, 1973, progressively led to heart failure ..."

.    .    .    .    .

A. "... I think the myocardial infarction of April 14, 1973 was a direct causal relationship to his demise in '82 ..." [Emphasis added]

■ We note that neither of the parties' medical experts personally attended Gold subsequent to the prior adjudication; and that both experts based their medical opinions upon the identical evidence. Additionally, the fact that Dr. K. sought to identify weaknesses, inconsistencies and flaws in Dr. E.'s testimony does not affect competency, so long as the testimony is founded on evidence of record and is material and relevant. Likewise, on review the relative strength of Dr. K.'s testimony does not affect the *competency* of Dr. E.'s testimony. The function of weighing the evidence resides in the trial court, and on appeal the existence of record evidence from which the trial court could have reached a contrary conclusion is immaterial. *Lindsey, supra.* A majority of this Court has held that a factual determination of the Workers' Compensation Court is binding on this Court, and the Court of Appeals, if supported by *any* competent evidence. *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okl.1984). Thus, the opinion of the Court of Appeals must be vacated and the order of the Workers' Compensation Court awarding benefits to the widow must be, and is hereby, sustained.

DOOLIN, V.C.J., and LAVENDER, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

OPALA, J., concurs in result.

SIMMS, C.J., and HODGES, J., dissent.