2011 OK 81

**EVANS & ASSOCIATES UTILITY SERVICES, and Zurich American Insurance Company, Petitioners,**

v.

**Ruben ESPINOSA and The Workers' Compensation Court, Respondents.**

No. 108,017.

Supreme Court of Oklahoma.

Oct. 4, 2011.

As Corrected Oct. 7, 2011.

Timothy E. Lurtz, Oklahoma City, Oklahoma, for Petitioners.

John C. Forbes, Midwest City, Oklahoma, for Respondent Espinosa.

KAUGER, J.:

■ ¶ 1 We granted certiorari to resolve a conflict between the Court of Civil Appeals differing interpretations [1] of the Workers' Compensation statute 85 O.S.2001 § 22(7).[2] This statute provides the schedule of compensation for permanent and temporary disability and subsection (7) limits the sum of all cumulative awards for an individual employee's lifetime. It provides in pertinent part:

7. Previous Disability. The fact that an employee has suffered previous disability or impairment or received compensation therefor shall not preclude the employee from compensation for a later accidental personal injury or occupational disease; but in determining compensation for the later accidental personal injury or occupational disease the employee's average weekly wages shall be such sum as will reasonably represent the employee's earning capacity at the time of the later accidental personal injury or occupational disease. In the event there exists a previous impairment which produced permanent disability and the same is aggravated or accelerated by an accidental personal injury or occupational disease, compensation for permanent disability shall be only for such amount as was caused by such accidental personal injury or occupational disease and no additional compensation shall be allowed for the pre-existing disability or impairment. The sum of all permanent partial disability awards, excluding awards against the Multiple Injury Trust Fund and awards for amputations, and surgeries, shall not exceed one hundred percent (100%) permanent partial disability for any individual. An individual may not receive more than five hundred twenty (520) weeks' compensation for permanent partial disability, but may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided in the Workers' Compensation Act.

1. Oklahoma Supreme Court Rules, 12 O.S.2001 Ch. 1 App. 1 Rule 1.178 provides in pertinent part:

(a) Reasons for Certiorari.
A review of an opinion of the Court of Civil Appeals in the Supreme Court on writ of certiorari as provided in 20 O.S.1991 § 30.1 is a matter of sound judicial discretion and will be granted only when there are special and important reasons and a majority of the justices direct that certiorari be granted. The following, while neither controlling nor fully measuring the Supreme Court's discretion, indicate the character of reasons which will be considered:
... (3) Where a division of the Court of Civil Appeals has rendered a decision in conflict with the decision of another division of that court; ...

2. Title 85 O.S. § 22 has been amended 39 times since its inception. However, the general rule is that the law in effect at the time of an employee's injury controls in workers' compensation matters. A compensation claim is controlled by the laws in existence at the time of injury and not by laws enacted thereafter. *King Manufacturing v. Meadows*, 2005 OK 78, ¶ 11, 127 P.3d 584; *Beets v. Metropolitan Life Ins. Co.*, 1999 OK 15, ¶ 2, fn. 2, 995 P.2d 1071. The trial court determined that the employee first became award of his injuries in 2003. The law in effect at that time was 85 O.S.2001 § 22(7) and it provides:

... the sum of all permanent partial disability awards, excluding awards against the Multiple Injury Trust Fund and awards for amputations, and surgeries, shall not exceed one hundred percent (100%) permanent partial disability for any individual. An individual may not receive more than five hundred twenty (520) weeks' compensation for permanent partial disability, but may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided in the Workers' Compensation Act.

¶2 One division of the Court of Civil Appeals had interpreted the exclusion of awards against the Multiple Injury Trust Fund and awards for amputations, and surgeries, to apply to both the 100% limitation and the 520 week limitation. In this cause, the appellate court determined that the exclusion applies to the 100% limitation, but not the 520 week limitation. We hold that when the Workers' Compensation Court awards compensation for an accidental personal injury or occupational disease, pursuant to 85 O.S.2001 § 22(7),[3] the sum of all permanent partial disability awards is limited to a total of 100% or 520 weeks for any individual, but awards against the Multiple Injury Trust Funds, or awards for amputations and surgeries are excluded from both limitations.

## FACTS

¶3 The petitioner, Evans & Associates Utility Services (employer) employed the respondent, Ruben Espinosa (Espinosa/employee) as a manual laborer. During the course of his employment, Espinosa suffered several injuries which resulted in multiple Workers' Compensation awards. The first award was in 2006, in which the employee was awarded permanent partial disability benefits for 27% binaural hearing loss totaling 89.1 weeks of benefits.[4] The second award was in July of 2009, in which the employee's lungs were determined to be 6% impaired for which he received 30 weeks of compensation.[5]

¶4 The third award, on August 11, 2009, was for injuries Espinosa sustained to his right leg, knee, neck or cervical spine, back, and lumbar spine. He was determined to be 20% impaired to the right leg and knee, 10% to the neck and 40% to the back for a total of 305 weeks of benefits. Apparently the back and knee injuries required surgery.[6] The present cause relates to an alleged cumulative trauma injury to Espinosa's shoulders, arms and hands.

¶5 On January 11, 2005, the employee filed his Form 3 with the Workers' Compensation Court alleging cumulative trauma injury to both hands and arms with January 5, 2005, as the last date of exposure. On June 22, 2005, he added injury to both shoulders. On April 13, 2005, The employer denied that Espinosa sustained any injury in the course and scope of employment.

¶6 After several interim orders relating to medical treatment, medical case management, and temporary disability, a hearing was held August 31, 2009.[7] At the hearing, the court was notified of the previous 2006 and two 2009 Workers' Compensation awards for permanent partial disability. The court entered its order on September 8, 2009,

3. Title 85 O.S.2001 § 22(7), see note 2, supra.

4. The 2006 award was mentioned in the August 31, 2009, hearing before the trial judge. The only other details regarding the award were that it was case number 2005–12289–A and the order was filed April 28, 2006. Otherwise no other information is provided.

5. The July 2009 award was also mentioned in the August 31, 2009 hearing before the trial judge. The only other details regarding it were that is was case number 2005–12733–R.

6. Again, details about the awards are limited to being mentioned in the August 30, 2009 hearing before the trial court. The award was made in case number 2005–00305–H on August 11, 2009.

The employee also received $400.00 for disfigurement for scarring.

7. For example, a June 6, 2005 order was entered allowing Espinosa to be examined by a Doctor. Medical treatment was authorized on November 9, 2005. The matter was referred to Medical Case management on January 24, 2006 and medical benefits were paid to a doctor and a rehabilitation facility on March 7, 2006. An order for medical treatment including surgery was entered March 23, 2006. Temporary Total Disability was awarded March 3, 2009, with the issue of possible over-payment reserved. Finally, the original trial judge recused on July 16, 2009.

awarding permanent partial disability benefits related to the hands, arms and shoulders injuries.

¶ 7 The September 8, 2009, order provides that: 1) the employee became aware of his injuries in November of 2003; 2) the last date of exposure to injury was January 7, 2005; and 3) the employee was entitled to $264.00 per week for permanent partial disability. The court also determined Espinosa to be permanently impaired 20% to the left hand, 20% to the right hand, 24% to the left arm, 20% to the right arm, 20% to the left shoulder and 20% to the right shoulder. The court found that the employee was entitled to be paid for 409 weeks of permanent partial disability. The employer noted the fact that the employee had previously been awarded 89.1 weeks in 2006, and 30 and 305.0 weeks in 2009 for a total of 424.1 weeks and requested that the award be limited to 95.9 weeks pursuant to 85 O.S.2001 § 22(7).[8] An award of 95.9 would have met the maximum total award of 520 allowed by § 22(7). [The 520 statutory limit minus the 424.1 previously awarded equals 95.9]. The court denied this request and also directed the employer to pay medical expenses.

¶ 8 The employer appealed the order to a three-judge panel, contending that the award exceeded the cumulative 520 week limit on permanent partial disability because the employee had previously been awarded permanent partial disability for past injuries. On January 27, 2010, the panel vacated a portion of the trial court's findings and substituted its own findings. It found that Espinosa was entitled to 409 weeks of compensation for his injuries, just as the trial court had found. It also determined, like the trial court, that prior to this cause, the employee had been awarded 424.1 weeks of compensation for previous injuries.

¶ 9 Nevertheless, the panel found that because 200 weeks of compensation was attributable to back surgery and 20 weeks were attributable to the right knee, 220 weeks should be subtracted from the 424.1 weeks previously awarded. We note that if 220 weeks were subtracted from 424.1 previously

awarded, the total number would be 204.1, however the inexplicable number the panel came up with was 169.1. It made this determination even though the record is unclear as to what portion of the employee's prior awards were actually attributable to surgeries.

¶ 10 Ultimately, the panel determined that the employee was entitled to 350.9 weeks of compensation. [The statutory limit of 520 minus 169.1, but the correct number should have been 520 minus 204.1 for a total of 315.9 weeks of benefits.] The employer appealed.

¶ 11 The Court of Civil Appeals: 1) noted the lack of evidence regarding previous surgeries and the erroneous calculations of the panel; 2) vacated the panel's decision and held that an employee may receive either a total permanent partial disability award of 100%, after excluding Multiple Injury Trust Fund awards and awards for surgeries and amputations or 520 weeks of permanent partial disability without such exclusions; and 3) recognized that its decision was contrary another division's opinion in *United General Contractors v. Campbell,* 2010 OK CIV APP 10, 231 P.3d 703. We granted certiorari on March 28, 2011, to resolve the two conflicting statutory constructions.

¶ 12 **PURSUANT TO 85 O.S.2001 § 22(7), AWARDS AGAINST THE MULTIPLE INJURY TRUST FUNDS, OR AWARDS FOR AMPUTATIONS AND SURGERIES ARE EXCLUDED FROM BOTH THE 100% AND 520 WEEK LIMITATIONS.**

■ ¶ 13 The employer argues that the clear language of 85 O.S.2001 § 22(7)[9] indicates that there are two distinct and separate caps on aggregate permanent partial disability awards—one lower cap of 100% which allows the exclusion of surgeries and one higher as a cap on lifetime awards to 520 weeks without any exclusions. The employee contends that the surgery exclusion must be read in conjunction with both limitations.

---

8. Title 85 O.S.2001 § 22(7), see note 2, supra.

9. Title 85 O.S.2001 § 22(7), see note 2, supra.

¶ 14 The Workers Compensation Act was designed to provide compensation to covered workers for loss of earning capacity, incurred as a result of work-related accidents.[10] It is a mutual compromise in which the employee relinquishes his/her right to sue for damages sustained in job-related injuries; and the employer accepts no-fault liability for a statutorily prescribed measure of damages.[11] However, in exchange for the employer's greater and more certain exposure, the Act also provides the employer with certain advantages. It offered the employer a maximum loss and protected employers from excessive judgments.[12] The object of the Act is to compensate, within the limits of the act, for loss of earning power and disability to work occasioned by injuries to the body in the performance of ordinary labor.[13]

¶ 15 In *Rivas v. Parkland Manor*, 2000 OK 68, 12 P.3d 452, the Court addressed one of the limitations provided to employers within the Act. *Rivas* involved an injured claimant who had been previously adjudicated 99.85% permanent partially disabled who sought additional benefits for a 1997 shoulder injury which resulted in permanent partial disability of 30%. The claimant's previous awards included medical treatment and surgery and had occurred prior to the 1997

shoulder injury, when 85 O.S.1991 § 22(7) contained no limitations of the percentage a worker could be adjudicated permanently partially disabled.[14] However, by 1997, the legislature had amended § 22(7) to limit a worker's cumulative permanent partial disability to 100%.[15] The legislature did not, at this time, carve out any exceptions for surgeries to be excluded from the 100% or 520 week limitations.

¶ 16 The question the Court addressed in *Rivas* was whether the 100% limit could constitutionally be applied to the injured claimant. The *Rivas* Court held that it could, noting that the 1997 injury was a totally new injury and not an exacerbation of a continuing injury. Even though the *Rivas* Court recognized that the claimant had previously been awarded medical treatment and surgery, there was no exclusion of such awards from the 100% statutory limitation because the statute did not provide for such exclusions. In fact, at the time, the statute specifically included awards against the Multiple Injury Trust Fund.

¶ 17 *Rivas* was decided on September 19, 2000, and the Legislature amended § 22(7) during the next legislative session in 2001.

**10.** *Thomas v. Oklahoma Orthopedic & Arthritis Foundation Inc.*, 1995 OK 47, ¶ 15, 903 P.2d 279.

**11.** *Weber v. Armco, Inc.*, 1983 OK 53, ¶ 4, 663 P.2d 1221.

**12.** *Upton v. State ex. rel. Dept. of Corrections*, 2000 OK 46, ¶ 8, 9 P.3d 84.

**13.** *Smalygo v. Green*, 2008 OK 34, ¶ 9, 184 P.3d 554; *Strong v. Laubach*, 2004 OK 21, ¶ 10, 89 P.3d 1066; *Phillips v. Duke Mfg.* 1999 OK 25, ¶ 6, 980 P.2d 137.

**14.** Title 85 O.S.1991 § 22(7).

**15.** *Rivas v. Parkland Manor*, 2000 OK 68, 12 P.3d 452 held that the version of the statute in effect when the new 1997 injury occurred applied. In *King Manufacturing v. Meadows*, see note 2, supra the Court held that when the injury is a change in condition rather than a new injury, the statute in effect at the time of the initial injury governs. Title 85 O.S. Supp.1997 § 22(7) provided:

7. Previous Disability. The fact that an employee has suffered previous disability or impairment or received compensation therefor shall not preclude him from compensation for a later accidental personal injury or occupational disease; but in determining compensation for the later accidental personal injury or occupational disease his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later accidental personal injury or occupational disease. In the event there exists a previous impairment which produced permanent disability and the same is aggravated or accelerated by an accidental personal injury or occupational disease, compensation for permanent disability shall be only for such amount as was caused by such accidental personal injury or occupational disease and no additional compensation shall be allowed for the pre-existing disability or impairment. The sum of all permanent partial disability awards, including awards against the Special Indemnity Fund, shall not exceed one hundred percent (100%) permanent partial disability for any individual. An individual may not receive more than five hundred twenty (520) weeks' compensation for permanent partial disability, but may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided in the Workers' Compensation Act.

The amended version specifically excluded awards against the Multiple Injury Trust Fund and awards for amputations and surgeries from the 100% limitation. It provided:

> The sum of all permanent partial disability awards, **excluding awards against the Multiple Injury Trust Fund and awards for amputations, and surgeries,** shall not exceed one hundred percent (100%) permanent partial disability for any individual. An individual may not receive more than five hundred twenty (520) weeks' compensation for permanent partial disability, but may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided in the Workers' Compensation Act.[16] (Emphasis supplied.)

Clearly the Legislature recognized that an injured worker such as the *Rivas* claimant may have had to endure amputations or surgeries as a result of on-the-job injuries and it amended the statute to exclude compensation from those surgeries when limiting cumulative award totals. This make sense because, where it not for the injured workers previous on-the-job injuries, the worker would not have had any previous amputations or surgeries.

■ ¶18 Nothing in the 2001 statutory change was added or deleted to the next sentence which also limited the total cumulative weeks to 520 weeks. We look to the text of the act, its underlying policies and to the purposes of workers' compensation generally in applying the provisions of the Act.[17] The logical interpretation of 22(7) is to apply the exceptions to both the provisions limiting permanent partial disability 100% and to 520 weeks. This is particularly true considering that after the 520 week limitation, the statute also provides that a claimant "may receive other benefits under the Workers' Compensation Act if otherwise eligible as provided" in the Act. Other benefits in the Act would necessarily include medical treatment and surgeries.

¶19 There is no rational reason expressed in the statute or otherwise as to why the Legislature would intend to treat either a claimant or an employer differently when an injured worker exceeds 520 weeks but not 100% when both the 100% and 520 week limitations on employer awards are aimed at capping an employer's liability. Accordingly, we hold that Workers' Compensation Court awards compensation for an accidental personal injury or occupational disease, pursuant to 85 O.S.2001 § 22(7),[18] the sum of all permanent partial disability awards is limited to a total of 100% or 520 weeks for any individual, but awards against the Multiple Injury Trust Funds, or awards for amputations and surgeries are excluded from both of these limitations.

**CONCLUSION**

¶20 When the Workers' Compensation Court awards compensation for an accidental personal injury or occupational disease, pursuant to 85 O.S.2001 § 22(7),[19] the sum of all permanent partial disability awards is limited to a total of 100% or 520 weeks for any individual, but awards against the Multiple Injury Trust Funds, or awards for amputations and surgeries, are excluded from both of these limitations. Here, the trial court did not exclude anything attributable to the surgeries from the employee's cumulative totals. On the other hand, the three-judge panel adjusted the award attributable to surgery, even though the record is unclear as to the *exact* portion attributable to previous surgeries.

■ ¶21 When reviewing resolutions of fact on non-jurisdictional issues from a three-judge panel of the Workers' Compensation Court under the statutory scheme applicable to this cause, we do not re-weigh the evidence, but instead look for any competent evidence to support the trial court's findings.[20] Competent evidence supporting the

**16.** Title 85 O.S.2001 § 22(7), see note 2, supra.

**17.** *Sizemore v. Continental Cas. Co.,* 2006 OK 36, ¶24, 142 P.3d 47; *Parret v. UNICCO Serv. Co.,* 2005 OK 54, ¶18, 127 P.3d 572.

**18.** Title 85 O.S.2001 § 22(7), see note 2, supra.

**19.** Title 85 O.S.2001 § 22(7), see note 2, supra.

**20.** *In the Matter of Death of Gray v. Ultramar Diamond,* 2004 OK 63, ¶24, 100 P.3d 691; *In the Matter of Death of Bryan v. Bryan,* 2003 OK 70, ¶18, 76 P.3d 653; *B.E. & K. Construction v.*

findings of a three-judge panel of the Workers' Compensation Court is that which is relevant and material to the issues to be determined.[21] In the absence of competent evidence, the decision of a three-judge panel may be viewed as legally erroneous and subject to appellate vacation.[22] Because there is evidence that prior awards were attributable to surgeries, but the actual portion of those awards is not reflected in the record, we overrule the three-judge panel and the trial court and remand the matter for a determination as to what portion of the previous awards were actually attributable to surgeries so that they may be excluded from the employee's cumulative limitations as provided by 85 O.S.2001 § 22(7).[23]

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; *EN BANC* PANEL OVERRULED; TRIAL COURT OVERRULED; CAUSE REMANDED WITH INSTRUCTIONS.**

COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, and GURICH, JJ., concur.

TAYLOR, C.J., and WINCHESTER, J., dissent.

*Abbott,* 2002 OK 75, ¶ 1, fn. 1, 59 P.3d 38; *Hughes v. Coal Grain Co.,* 1998 OK 76, ¶ 5, 964 P.2d 206. In 2011, the Legislature changed this standard of review. The new statute, 85 O.S. Supp.2011 § 340 provides in pertinent part:

... The Supreme Court shall have original jurisdiction of such action, and shall prescribe rules for the commencement and trial of the same. After the effective date of this act, regardless of the date of injury, the Supreme Court may modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:
1. The Court acted without or in excess of its powers;
2. The order or award was contrary to law;
3. The order or award was procured by fraud; or

4. The order or award was against the clear weight of the evidence....

21. *In the Matter of Death of Gray v. Ultramar Diamond,* see note 20, supra; *In the Matter of Death of Bryan v. Bryan,* see note 20, supra. *OKC Refining Co., Inc., v. Gold,* 1985 OK 42, ¶ 12, 701 P.2d 1034; *City of Oklahoma v. Lindsey,* 1976 OK 48, ¶ 14, 549 P.2d 81.

22. *In the Matter of Death of Gray v. Ultramar Diamond,* see note 20, supra; *In the Matter of Death of Bryan v. Bryan,* see note 20, supra. *Hughes v. Cole Grain Co.,* see note 20, supra; *P.F.L. Life Ins. v. Franklin,* 1998 OK 32, ¶ 26, 958 P.2d 156.

23. Title 85 O.S.2001 § 22(7), see note 2, supra.