2016 OK 89
**Jonnie Yvonne VASQUEZ,**
**Plaintiff/Respondent,**

v.

**DILLARD'S, INC., Qualified Employer,**
**Defendant/Petitioner.**

Case Number: 114810

Supreme Court of Oklahoma.

Decided: September 13, 2016

G. Calvin Sharpe, Catherine L. Campbell, Amy D. White, PHILLIPS MURRAH P.C., Oklahoma City, Oklahoma, for Defendant/Petitioner, Dillards, Inc.

Jay M. Wallace (pro hac vice), Alana Ackels (pro hac vice), BELL NUNNALY & MARTIN LLP, Dallas, Texas, Rabindranath

Ramana, CALVERT LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Respondent, Jonnie Yvonne Vasquez

Bob Burke, Oklahoma City, Oklahoma, Patrick R. Wyrick, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for the State of Oklahoma

Brandon Burton, Oklahoma City, Oklahoma, Kathleen G. Sumner, Greensboro, NC, Amici Curiae for Academic Experts in support of Respondent Vasquez

Brandon Burton, Oklahoma City, Oklahoma, Daniel M. Dalmat, Daniel M. Rosenthal, JAMES & HOFFMAN, P.C., Washington, D.C., Amici Curiae for National Employment Law Project

Larry Derryberry, Douglas A. Rice, DERRYBERRY & NAIFEH, LLP, Oklahoma City, Oklahoma, Amici Curiae for AIA, PCI and NAMIC in support of Respondent Vasquez

WATT, J:

¶1 With the constitutionality of the Oklahoma Employee Injury Benefit Act, 85A O.S. Supp. 2014 201–213, squarely before this Court in the instant cause, we determine that we have authority to address the special law issues presented pursuant to the legislative directive contained in 85A O.S. Supp. 2014 213(A)[1] and under Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, 371 P.3d 477. The core provision of the Opt Out Act, 85A O.S. Supp. 2015 203[2] creates impermissible, unequal, disparate treatment of a select group of injured workers. Therefore, we hold that the Oklahoma Employee Benefit Injury Act, 85A O.S. 2014 201–213, is an unconstitutional special law under the Oklahoma Constitution, art. 2, 59.[3]

## PROCEDURAL POSTURE

¶2 Vasquez, Dillard's employee, injured her neck and shoulder as she lifted shoe boxes while working on September 11, 2014.[4] On that date and on September 24th, she filed claims for benefits under Dillard's Opt-Out plan. Dillards denied the claims on October 3 and 10, 2014, respectively. The employee appealed to the Workers' Compensation Commission, filing a Notice of Claim for Compensation on December 5, 2014.

¶3 The employer sought removal to federal court on August 6, 2015 on grounds that the federal court had exclusive jurisdiction under the Employee Retirement Income Security Act (ERISA). The United States District Court for the Western District disagreed and remanded the cause to the Commission on September 30, 2015. The Commission heard arguments in the cause

---

1. Title 85A O.S. Supp.2014 213(A), see note 8, infra.

2. Title 85A O.S. Supp. 2015 203(B) provides

"The benefit plan shall provide for payment of the same forms of benefits included in the Administrative Workers' Compensation Act for temporary total disability, disfigurement, amputation or permanent total loss of use of a scheduled member, death and medical benefits as a result of an occupatioal injury, on a no-fault basis, and with dollar, percentage and duration limits that are at least equal to or greater than the dollar, percentage, and duration limits contained in Sections 45, 46, and 47 of this title. For this purpose, the standards for determination of average weekly wage, death beneficiaries, and disability under the Administrative Workers' Compensation Act shall apply under the Oklahoma Employee Injury Benefit Act, but **no other provision of the Administrative Workers' Compensation Act defining covered injuries, medical management, dispute resolution or other process, funding, notices or penalties shall apply or otherwise be controlling under the Oklahoma Employee Injury Benefit Act, unless expressly incorporated.**" [Emphasis supplied.]

3. The Okla. Const. art. 5, 59 providing:

"Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."
We do not address whether the Opt Out Act might violate another constitutional special laws provision. See, the Okla. Const. art. 5, 46 providing in pertinent part:
The Legislaure shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: ... Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts ..."

4. We express no opinion on the merits of the employee's claim. Rather, the issue is left to the Commission on remand. In addition, our holding that the Opt Out Act is unconstitutional eliminates the necessity of enumerating the multiple ways in which Dillard's plan and its coverage provisions are more restrictive or different from those included in the Administrative Act.

in February, issuing an order in the cause on September 26, 2015. It found that the Opt Out Act: 1) constituted an unconstitutional special law;[5] 2) denied equal protection to Oklahoma's injured workers;[6] and 3) denied injured workers the constitutionally protected right of access to courts.[7]

¶4 On March 17, 2016, Dillard's filed a petition for review with this Court. Extensive briefing ensued by the parties, the Attorney General,[8] and various *amici curiae*. The most recent filing in the cause, the employee's Submission of Supplemental Authority, occurred on the afternoon of July 30th. We issue today's opinion in conjunction with the Legislature's directive that appeals alleging constitutional challenges to the Opt Out Act should be expedited [9] and in recognition that multiple cases concerning challenges similar to the one presented here have currently been stayed by the Commission.

## DISCUSSION

¶5 **a. Constitutional issues are properly before this Court pursuant to the legislative mandate of 85A O.S. Supp. 2014 213(A) and Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, 371 P.3d 477.**

■ ¶6 Dillard's assertions that this Court lacks jurisdiction to hear the instant

cause are unconvincing. In 213(A) of the Opt Out Act,[10] the Legislature directs that whenever the constitutionality of the Act is challenged, the Supreme Court shall [11] retain the appeal. Furthermore, we are instructed to expedite review.

¶7 We have recently determined in Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, 371 P.3d 477, that the Commission has no authority to determine the facial constitutionality of the Opt Out Act as a special law. Therefore, the Commission's determinations of constitutionality were not authorized as a blanket strike of the Opt Out Act.

¶8 The portion of Robinson important to these proceedings is found at 14. It provides that "this Court has a duty to review the constitutionality of a challenged legislative enactment when presented with a justiciable case or controversy. . . ." We are presented with such a cause here.

■ ¶9 At issue is a challenge to the constitutionality of the Opt Out Act. Robinson confirms that it is this Court's responsibility to address the issue currently before us. Furthermore, the Legislature has directed us to do so in a timely manner. Therefore, we determine that issues related to the constitutionality of the Opt Out Act are properly before this Court.[12]

5. The Okla. Const. art. 5, 59 and 46, see note 3, supra.

6. Fair School Finance Council v. State, 1987 OK 114, ¶54, 746 P.2d 1135, 1148; McKeever Drilling Co. v. Egbert, 1934 OK 763, ¶15, 170 Okla. 259, 40 P.2d 32, 35–36. The terms of 7 are: "No person shall be deprived of life, liberty, or property, without due process of law."

7. The Okla. Const. art. 2, 6 providing in pertinent part:
"The courts of this state . . . shall be open to every person and justice . . . shall be administered without sale. . . ."

8. Title 12 O.S. 2011 1653 (c)

9. Title 85A O.S. Supp. 2014 213(A) providing:
"In any action brought to challenge, in whole or in part, the costitutionality of this act, any party to such action may take a direct appeal from the decision of any lower court to the Supreme Court and the Supreme Court shall retain the appeal. The Supreme Court on an expedited basis shall consider the appeal."

10. *Id.*

11. Generally, the use of "shall" signifies a command. Zeier v. Zimmer, Inc. 2006 OK 98, fn. 13, 152 P.3d 861; Cox v. State *ex rel.* Oklahoma Dept. of Human Services, 2004 OK 17, ¶27, 87 P.3d 607, 618; United States through Farmers Home Admin. v. Hobbs, 1996 OK 77, ¶7, 921 P.2d 338. Nevertheless, there may be times when the term is permissive in nature. Cox v. State *ex rel.* Oklahoma Dept. of Human Services, this note, supra; Minie v. Hudson, 1997 OK 26, ¶27, 934 P.2d 1082; Texaco, Inc. v. City of Oklahoma City, 1980 OK 169, ¶9, 619 P.2d 869.

12. Initially, Dillard's asserted that the Court lacked the authority to address the constitutional issues on grounds that the cause was governed by ERISA and that the federal law preempted the Workers Compensation Act. The employer sought removal which was denied by the United States District Court for the Western District of Oklahoma. Its order provides in pertinent part at page 3 (located at p. 122 of the record):
". . . The court concludes that the OIEBA (sic) is part of Oklahoma's statutory scheme governing

**¶ 10 b. The Opt Out Act is an unconstitutional special law, creating an impermisible select group of employees seeking compensation for work-related injuries for disparate treatment, in violation of art. 5, 59 of the Oklahoma Constitution.**

■ ¶ 11 Before addressing the various arguments of the parties, it is helpful to understand the test for determining whether a law violates the special law prohibition of art. 5, 59. Its terms are that:

"Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

Statutes facing an art. 5, 59 challenge are considered pursuant to a three-part test to determine constitutional muster. First, is the law special or general? Second, if the law is special in nature, does a general law apply? And, finally, if a general law is not applicable, is the statute a permissible special law?[13]

■ ¶ 12 The first prong requires us to identify the class. If the statute relates to all persons or things within the class, it is a general law. Where the law singles out less than an entire class of similarly affected persons or things for different treatment, it is a special law. Under the second prong, the question is whether the legislation is susceptible of general treatment or if some special situation makes treatment by a general law impossible. Third, it must be determined whether the special law is so substantially related to a valid legislative objective that it will survive the constitutional challenge.[14]

¶ 13 The above analysis was posited by this Court in Reynolds v. Porter, 1988 OK 88, 760 P.2d 816. We consider the arguments of the parties, in which many of the concerns of the Attorney General are subsumed, in making our determination as to whether the Opt Out is general or special in nature.

**¶ 14. 1) The defined class for special law analysis is made up of injured employees.**

■ ¶ 15 Dillard's contends that there is no disparate treatment of the class at issue in the Opt Out Act. It does so by alleging that the relevant stautorily-created class is composed of "all employers" rather than injured employees. Vasquez insists that the class at issue is that of "injured employees." We consider the employer's argument unconvincing and agree with the employee.

¶ 16 The employer relies on Grimes v. City of Oklahoma City, 2002 OK 47, 49 P.3d 719 for the propisition that the defined class should be considered to be employers rather than employees. Grimes upheld, against a special law attack, the municipality's right to determine the manner in which to support economically the schools within its corporate limits. In so doing, we recognized that the members of the class were the municipalities, all of which were given the same option.

¶ 17 Grimes is distiguishable on its facts and provides no assistance to the employer's arguments. It did not address any issue related to the workers' compensation scheme or rights among injured employees. Rather, it concerned the authority of municipalities to manage tax revenues in support of select public schools. In determining that no special law was involved and in defining the class at issue, the Grimes court looked to the title of the legislative act, "Municipal support of public school systems." It determined that **the title of the act, referring to municipalities, indicated that the class at issue was made up of all municipalities of the state and was general in nature.**

¶ 18 Here, the **title of the Opt Out Act makes no mention of employers. Rather, the legisation is entitled as the "Employee Injury Benefit Act." Furthermore, the title**

occupational injuries and workplace liability; in other words, the OIEBA (sic) is part of Oklahoma's statutory scheme governing workmen's compensation. The court further concludes that this action arises under the workmen's compensation laws of Oklahoma. Accordingy, 28 U.S.C. 1445 makes this action nonremovable. The fact that the plan under which plaintiff claims may be (and is presumed to be, for present purposes) an ERISA plan, does not change these conclusions...."

To the extent that issues are not briefed, they are considered waived. Rouse v. Oklahoma Merit Protection Comm'n, 2015 OK 7, fn. 2, 345 P.3d 366; Johnson v. Ford Motor Co., 2002 OK 24, fn.2, 45 P.3d 86; Burrows v. Burrows, 1994 OK 129, ¶ 3, 886 P.2d 984.

13. Reynolds v. Porter, 1988 OK 88, 760 P.2d 816.

14. Id.

of the Administrative Act refers to "workers" rather than employers. Just as the title of the act was considered to encompass the identified class in <u>Grimes</u>, it also serves as legislative intent here that the identified class is that of "injured employees."[15]

¶ 19 **2) The Opt Out Act does not guarantee members of the subject class, all employees, the same rights when a work related injury occurs. Rather, it provides employers the authority to single out their injured employees for inequitable treatment.**

¶ 20 The employer makes the rather incredible argument that the Opt Out Act provides a baseline of Core Coverage requirement in 203(B) guaranteeing individual injured employees equal treatment. Vasquez relies on the same statutory provision for the proposition that inequitable treatment is specifically allowed. We are convinced by the very language of the statutory provision that the employee's position is viable.

¶ 21 Title 85A O.S. Supp. 2015 203(B) provides:

The benefit plan shall provide for payment of the same forms of benefits included in the Administrative Workers' Compensation Act for temporary total disability, disfigurement, amputation or permanent total loss of use of a scheduled member, death and medical benefits as a result of an occupational injury, on a no-fault basis, and with dollar, percentage and duration limits that are at least equal to or greater than the dollar, percentage, and duration limits contained in 45, 46, and 47 of this title. For this purpose, the standards for determination of average weekly wage, death beneficiaries, and disability under the Administrative Workers' Compensation Act shall apply under the Oklahoma Employee Injury Benefit Act, but **no other provision of the Administrative Workers' Compensation Act defining covered injuries, medical management, dispute resolution or other process, funding, no-** tices or penalties shall apply or otherwise be controlling under the Oklahoma Employee Injury Benefit Act, unless expressly incorporated. [Emphasis supplied.]

¶ 22 Rather than providing employees of qualified plan employers equal rights with those of employees falling within the Workers' Compensation Act, the clear, concise, unmistakeable, and mandatory language [16] of the Opt Out Act provides that, absent the Act's express incorporation of some standard, **such employers are not bound by any provision of the Workers' Compensation Act for the purpose of: defining covered injuries; medical management; dispute resolution or other process; funding; notices; or penalties.** The statutory language itself demonstrates that injured workers under the Opt Out Act have no protection to the coverage, process, or procedure afforded their fellow employees falling under the Administrative Workers' Compensation Act. There is little question that 203 specifically allows the employers creating their own plans to include conditions for recovery making it more difficult for the injured employee falling within to recover for a work-related injury than a counterpart covered by the Administrative Act.

¶ 23 Analysis under the first prong of the three part test in determining the nature of a law as general or special in nature is accomplished. The class being that of "all employees" rather than "all employers" coupled with the reality that "all employees" are not guaranteed the same rights when injuries occur, we determine that the Opt Out Act is a special law.

¶ 24 **3) The applicable general law is the Administrative Workers' Compensation Act.**

¶ 25 The second prong of the test requires a determination of whether a general law applies. Dillard's contends that there is no generally applicable legislative provision.

---

15.  Clearly, the class at issue under the Workers' Compensation Act, is also defined as that of injured employees. Recently, in <u>Torres</u> v. <u>Seaboard Foods</u>, <u>LLC</u>, 2016 OK 20, ¶ 47, 373 P.3d 1057, we declined the employer's invitation to adopt a distinction between the "class of employ- ees" similarly injured under the Administrative Workers' Compensation Act.

16.  See, note 11, supra, and the cases cited therein.

Vasquez insists the general law exists in the form of the Workers' Compensation Act. We agree with the employee.

¶ 26 There is undoubtedly a general law covering the issue of compensation for individuals injured during the course of their employment. Absent the existence of the Opt Out Act, all injured employees, not specifically excluded from the Workers' Compensation Act's coverage, could proceed to seek redress for work-related injuries. The Administrative Workers' Compensation Act defines, with enumerated exceptions, an "employee" as "any person in the service of an employer under any contract of hire or apprenticeship."[17] Section 3 of 85A O.S. Supp. 2014 provides that "every employer" and "every employee" shall be bound by the Administrative Act absent exclusivity enumerated in the Act. "Every" ordinarily means "any" or "all" and suggests a broad, expansive meaning inclusive in nature.[18] There is no question that its subject is "general" in nature and that all employees covered by its provisions may seek relief thereunder.

### ¶ 27 3) The Opt Out Act is not a constitutionally permissive special law.

¶ 28 Dillard's final contention is that even if the Opt Out Act is a special law, it is constitutionally permissible because the Act is substantially and reasonably related to a legitimate government objective. Some of the identified underlying goals posited by the employer include: providing a more effective system of identifying and treating workplace injuries; improving access to medical treatment; improving worker health and safety; and encouraging job creation. Dillard's argues that the Legislature intended to accomplish these goals by giving employers the freedom to manage and administer the provision of benefits to their injured employees. Vasquez points to the general law as the Administrative Workers' Compensation Act and argues that there is no distinctive characteristic which warrants treating less than all injured employees similarly. We agree with the employee's reasoning.

¶ 29 We remain convinced that the employer-enumerated goals of the Opt Out Act cannot save it from the constitutional challenge presented. This Court has previously made it clear we will not accept the invitation of employers to find a discriminatory state statute constitutional by relying on the interests of employers in reducing compensation costs.[19]

¶ 30 This Court recently visited an argument similar to the one presented here in Maxwell v. Sprint PCS, 2016 OK 41, 369 P.3d 1079. The Maxwell employer insisted that deferral of permanent partial disability benefits to a subclass of injured workers under the Administrative Workers' Compensation Act was a constitutionally permmissive special law.

¶ 31 In Maxwell, we recognized the Legislature's authority to exclude entire classes of employees from coverage under the workers' compensation system generally. Nevertheless, the Court also acknowledged that the Legislature was without power to vary the effect of an award by excluding one group of claimants from benefits accorded other recipients. In so doing, we relied upon the following statement from Grant v. Goodyear Tire & Rubber Co., 2000 OK 41, ¶ 10, 5 P.3d 594, 598, wherein this Court wrote:

> For a special law to be permissible, there must be some distinctive characteristic warranting different treatment and that furnishes a practical and reasonable basis for discrimination.... If there is neither a distinctive characteristic upon which a different treatment may reasonably be founded nor one which furnishes a practical and real basis for discrimination between the two groups within the class, the distinction becomes arbitrary and without relation to the subject matter. (citations omitted.)

¶ 32 The class at issue here is composed of workers seeking compensation for their work-related injuries. No distinctive characteristic exists for the disparate treatment of injured employees simply upon the basis that

---

17. Title 85A O.S. Supp. 2013 2(8)(a).

18. Coffee v. Henry, 2010 OK 4, ¶ 3, 240 P.3d 1056.

19. Torres v. Seaboard Foods, Inc., see note 15, supra.

the employer has opted out of the general workers' compensation system.

¶ 32 **The heart of the Opt Out Act is 203. Simple excision of the offending provision would eviscerate the very foundation of the Oklahoma Employee Injury Benefit Act.**

¶ 33 The Attorney General argues that the Compensation Commission and, presumably, this Court, should either read 203 to provide identical benefits as found within the confines of the Administrative Act, eliminating the disparate treatment of the class, or merely sever the unconstitutional portion of the statute. Although we recognize that the Opt Out Act contains a severance provision providing for severance of any offending provision,[20] the suggestion that the Act can be saved by simply requiring that qualified employers treat their employees exactly as the Administrative Act requires, would effectively frustrate any rational reason for an employer to go to the trouble and expense of developing a plan required to mirror the surviving statutory scheme. Such employers would be liable to the same extent as an employer having complied with the Administrative Act.

## CONCLUSION

¶ 34 A general law encompasses all of a class. A special law is one that rests on a false or deficient classification.[21] We do not correct the Legislature nor do we take upon ourselves the responsibility of legislating by judicial fiat. However, we are compelled to apply Oklahoma's Constitution.[22]

¶ 35 Since the passage of the dual workers' compensation system, this Court has been asked to rule on a multitude of challenges to the new scheme's constitutionality. In each of those causes, we have begun with the premise that such statutory provisions are presumed to be, and should be construed so as to be, constitutional whenever possible. Often over vigorous special writings, the Court decided the causes on the narrowest grounds possible. Nevertheless, this cause squarely presents the issue of whether the Opt Out Act is an unconstitutional special law demonstrated by the language of a statutory provision which is the heart of the Act's premise. As we consider this issue dispositive, we have not reached other constitutional challenges to the Opt Out Act based on denials of equal protection, due process, and access to courts.

¶ 36 The constitutionality of the Oklahoma Employee Injury Benefit Act, 85A O.S. 2014 201–213 is squarely before this Court in the instant cause. Therefore, we determine that we have authority to address the special law issues presented pursuant to the legislative directive contained in 85 O.S. Supp. 2014 213(A)[23] and under Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, 371 P.3d 477. The core provision of the Opt Out Act, 85A O.S. Supp. 2015 sec. 203,[24] creates impermissible, unequal, and disparate treatment of a select group of injured workers. Therefore, we hold that the Oklahoma Employee Benefit Injury Act, 85A O.S. 2014 201–213, is an unconstitutional special law under the Oklahoma Constitution, art. 2, 59.[25]

¶ 37 This action is a direct attack on constitutional grounds pursued because the em-

---

20. Title 85A O.S. Supp. 2014 213(B)(1) providing in pertinent part:
"... To the extent this act, or any part thereof, is declared to be unconstitutional or unenforceable, it is specifically intended that:
1. For partial invalidity of this act, where any part thereof, is declared to be unconstitutional or invalid, the same shall not affect the validity of the act as a whole, or any part thereof other than the part so decided to be unconstitutional or invalid ..."

21. Zeier v. Zimmer, see note 11, supra; Jack v. State, 1937 OK 394, ¶ 8, 183 Okla. 375, 82 P.2d 1033; Barrett v. Board of Comm'rs of Tulsa County, 1939 OK 68, ¶ 0, 185 Okla. 111, 90 P.2d 442.

22. Zeier v. Zimmer, see note 11, supra; Horvat v. State ex rel. Dept. of Corrections, 2004 OK CIV APP 59, ¶ 10, 95 P.3d 190, cert. denied, 2004 OK 52, 94 P.3d 80, released for publication by order of the Supreme Court of the State of Oklahoma (2004).

23. Title 85A O.S. Supp.2014 sec. 213(A), see note 9, supra.

24. Title 85A O.S. Supp. 2015 sec. 203, see note 2, supra.

25. The Okla. Constitution art. 5, 59, see note 1, supra.

ployee believed her rights were denied under an unconstitutional statutory provision. Neither the United States nor the Oklahoma Constitution delineates the effective date of judicial opinions. We are cognizant that there are a number of causes currently pending in the Commission which have been stayed because they concerned issues similar to those presented here. Therefore, this decision is to be given effect in the immediate cause, in the causes currently being challenged before the Commission and in the appellate pipeline, and prospectively to all future cases after the issuance of mandate.[26]

¶ 38 The cause is remanded for proceedings consistent with the provision of the Court's opinion.

**ORDER OF THE WORKERS' COMPENSATION COMMISSION EN BANC VACATED; CAUSE REMANDED.**

REIF, C.J., COMBS, V.C.J. (by separate writing), KAUGER, WATT, EDMONDSON, and COLBERT, JJ.—CONCUR

GURICH, J. (by separate writing)—CONCURS SPECIALLY

WINCHESTER (by separate writing), and TAYLOR, JJ.—DISSENT

COMBS, V.C.J., concurring specially, with whom Kauger and Colbert, JJ., join:

¶ 1 I concur in the majority's determination that the Employee Injury Benefit Act (Opt Out Act), 85A O.S. Supp. 2014 200–213 is an unconstitutional special law within the meaning of Okla. Const. art. 5, 59. Determining the special law issue to be dispositive, the majority declines to address other constitutional infirmities present in the Opt Out Act.

¶ 2 I write separately to emphasize that I would expand on the majority's special law analysis and address other areas in which the Opt Out Act is constitutionally deficient. Specifically, in addition to being an unconstitutional special law because it subjects injured workers to disparate court procedure and process, the Opt Out Act fails to provide adequate due process protections. My reasons remain the same as those I set out previously in my separate writing in *Coates v. Fallin*, 2013 OK 108, 316 P.3d 924.

GURICH, J., with whom COLBERT, J., joins, concurring specially:

¶ 1 The bottom line in the case before us is this: The state of Oklahoma can either allow an employer to opt out [1] of the state's workers' compensation system entirely and lose exclusive remedy protections; OR the state can require an employer to provide coverage for work-place injuries under the state's workers' compensation system and be given the protections of exclusive remedy. Because the system as it stands now seeks to allow an employer to both opt out of the workers' compensation system and still be provided with exclusive remedy protections, I concur with the majority in concluding that the Oklahoma Employee Injury Benefit Act (OEIBA)[2] is inoperable as a matter of law and must be found unconstitutional in its entirety. However, I write separately to explain several additional concerns.

### Texas Opt–Out System vs. Oklahoma Opt–Out System

¶ 2 Texas has, since the inception of its workers' compensation system, allowed employers to opt out.[3] Under the Texas Work-

26. DuLaney v. Oklahoma State Dept. of Health, 1993 OK 113, ¶ 20, 868 P.2d 676, 685.

1. Texas and Oklahoma are the only states to date that have enacted "opt-out" systems. Several states, including Tennessee and South Carolina, have considered opt-out legislation in the past few years but to date, no other state has enacted an opt-out system. See Jennifer C. Jordan, Opt Outs to Workers' Compensation: The Real Disconnect in What is Being Said and What is Being Implemented, LexisNexis Legal Newsroom Workers Compensation Law, Jan. 22, 2016. This same article notes that "[s]tates such as Arizona, Indiana, Georgia, Arkansas, Wisconsin and West Virginia were all mentioned ... as potentially considering similar legislation." Id.

2. See 85A O.S. Supp. 2013 200–213. The Legislature enacted the OEIBA in 2013, and the Act went into effect on February 1, 2014. Respondent Vasquez was injured on September 11, 2014, and thus, the parties agree that the 2013 Act applies in this case. See Petitioner Dillard's, Inc.'s Brief-in-Chief at 8; Attorney General's Brief on the Merits of the Constitutional Claims at n.2; Respondent's Brief–in–Chief at n.2.

3. Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 552 (Tex. 2001) ("[F]rom its inception, participation in the Act has been voluntary."). See also

ers' Compensation Act (TWCA),[4] an employer can choose whether or not to "subscribe" to workers' compensation insurance.[5] If an employer subscribes to workers' compensation insurance under the TWCA, an injured employee "may recover statutorily-prescribed benefits without regard to the employer's fault or the employee's negligence."[6] "In exchange, the employee may not bring common-law claims against the subscribing employer."[7] Additionally, under the Texas system *employees* also have the option of opting out—"an injured employee may retain the right to assert common-law claims against a subscribing employer if the employee timely elected in writing to waive workers' compensation insurance coverage."[8] When an employee timely waives workers' compensation insurance coverage, "the employer may raise all common-law defenses."[9] Thus, under the Texas system, participation in the workers' compensation system is "voluntary and elective as to both employer and employee."[10]

¶ 3 However, the Texas system also gives an employer the option to not subscribe to workers' compensation insurance at all, i.e. opt out.[11] If an employer provides no benefits for an on-the-job injury, the "[n]onsubscribing employers' employees retain the right to bring personal-injury claims against their employers" in the courts.[12] In defending against such claims, however, a nonsubscribing employer loses all traditional common-law defenses, thus, "encourag[ing] employers to subscribe and penaliz[ing] those who do not."[13]

¶ 4 In addition, employers in Texas who opt out can also establish an alternative benefit plan to provide certain benefits for on-the-job injuries. Importantly, such plans are not required to provide the same benefits as provided for in the TWCA, and the plans are not regulated in any way by the TWCA. Thus, "[w]hile some plans provide adequate coverage, others do not primarily because the State does not regulate the adequacy of the benefits received under the plans. A nonsubscribing employer has the unfettered discretion in determining the amount of benefits it will provide employees under an alternative plan."[14] Such alternative benefit plans are, generally speaking, covered by the Employee Retirement Income Security Act (ERISA), and do not "guarantee substantive benefits."[15] In Texas, injured workers seeking to recover benefits under such alternative plans may end up in federal court as such claims are removable under ERISA's civil enforcement provision.[16]

¶ 5 Under Oklahoma's newly created workers' compensation system, enacted under Title 85A and effective February 1, 2014,[17] employers may continue to provide coverage for workplace injuries under the traditional

Middleton v. Tex. Power & Light Co., 108 Tex. 96, 185 S.W. 556, 559 (1916).

**4.** See Tex. Lab. Code 401.001 *et seq.*

**5.** See Lawrence, 44 S.W.3d at 556 (Baker, J., dissenting).

**6.** Id. at 555 (citing Tex. Lab. Code 406.031; 406.033 and Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex. 2000)).

**7.** Id. (citing James v. Vernon Calhoun Packing Co., 498 S.W.2d 160, 162 (Tex. 1973)).

**8.** Id. (citing Tex. Lab. Code 406.034(b)).

**9.** Id. (citing Tex. Lab. Code 406.034(d)).

**10.** Id. at 552 (majority op.) (citing Paradissis v. Royal Indem. Co., 507 S.W.2d 526, 529 (Tex. 1974)).

**11.** Id. at 555 (Baker, J., dissenting) (citing Tex. Lab. Code 406.002).

**12.** Id. (citing Tex. Lab. Code 406.033).

**13.** Id. (citing Tex. Lab. Code 406.033(a) and Kroger Co., 23 S.W.3d at 349).

**14.** Phil Hardberger, Texas Workers' Compensation: A Ten–Year Survey—Strengths, Weaknesses, and Recommendations, 32 St. Mary's L.J. 1, 7 (2000).

**15.** Gobeille v. Liberty Mut. Ins. Co., —— U.S. ——, 136 S.Ct. 936, 943, 194 L.Ed.2d 20 (2016). ERISA seeks only "to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." Id.

**16.** See 29 U.S.C. 1132(e)(1). See also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

**17.** Senate Bill 1062 was enacted during the 2013 legislative session and repealed the Workers' Compensation Code. Enacted in its place in Title 85A was the Administrative Workers' Compensation Act ( 1–125), the Oklahoma Employee Injury Benefit Act ( 200–213), and the Workers' Compensation Arbitration Act ( 300–328). Section 400 dissolved the Workers' Compensation Court. Terms used in the AWCA are referenced in the OEIBA, and 201 of the OEIBA specifically di-

no-fault workers' compensation system, now governed by the Administrative Workers' Compensation Act (AWCA).[18] Employers are provided immunity from civil liability, and "[t]he rights and remedies granted to an employee subject to the provisions of the [AWCA] [are] exclusive of all other rights and remedies of the employee . . . ."[19]

¶ 6 Employers may also "opt out" of the AWCA and instead be governed by the OEIBA.[20] **The newly enacted system requires employers to choose whether to provide coverage under the AWCA or to maintain an employee benefit plan under the OEIBA.**[21] Thus, unlike in Texas, an employer in Oklahoma cannot opt out of the workers' compensation system entirely. An employer in Oklahoma who elects to "opt out" not only remains subject to the mandates of the OEIBA,[22] but is also subject to the jurisdiction of the Workers' Compensation Commission[23] and certain regulations of the Oklahoma Insurance Commissioner.[24] In addition, an employer who "opts out" under the OEIBA maintains exclusive remedy protections, and the exclusive remedy protections are "as broad as the exclusive remedy protections of

Section 5 of [the AWCA], and thus preclude a covered employee's claim against a qualified employer, its employees, and insurer for negligence or other causes of action."[25] Neither the AWCA nor the OEIBA allows an injured worker to opt out by waiving his or her employer's workers' compensation insurance coverage and retaining the right to assert common-law claims in court.[26] Oklahoma's opt-out system is an opt-out system *in name only.*

### The Dillard's Employee Benefit Plan is an ERISA Plan

¶ 7 ERISA was enacted by Congress in 1974 and "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA "imposes participation, funding, and vesting requirements on pension plans," and "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." Id. at 91, 103 S.Ct. 2890. However, "ERISA does not man-

tion, defined terms in the [AWCA] shall have the same meaning in this act." 85A O.S. Supp. 2013 201(B).

18. See 85A O.S. Supp. 2013 1–125.

19. 85A O.S. Supp. 2013 5.

20. 85A O.S. Supp. 2013 200–213.

21. See 85A O.S. Supp. 2013 210(B) ("An employer who is not a qualified employer shall comply with the provisions of the [AWCA].).

22. See, e.g., 85A O.S. Supp. 2013 203(B) ("The benefit plan shall provide for payment of the same forms of benefits included in the [AWCA] for temporary total disability, temporary partial disability, permanent partial disability, vocational rehabilitation, permanent total disability, disfigurement, amputation or total loss of use of a scheduled member, death, and medical benefits as a result of an occupational injury on a no-fault basis, and with dollar, percentage, and duration limits that are at least equal to or greater than the dollar, percentage, and duration limits contained in [the AWCA] . . . .").

23. As discussed in more detail below, the OEIBA allows the Commission to review an adverse

benefit determination by an opt-out employer. 85A O.S. Supp. 2013 211.

24. The OEIBA requires a qualified employer to either "self-fund or insure benefits payable under the benefit plan," but such employer must "secure compensation to covered employees." 85A O.S. Supp. 2013 204(A–B). An employer who fails to fulfill such requirements "is not relieved of the obligation for compensation to a covered employee." 85A O.S. Supp. 2013 204(D). In addition, "[a]n employer that has elected to become a qualified employer . . . shall notify the Insurance Commissioner in writing of the election and the date the election is to become effective . . . and [s]uch qualified employer shall pay the Commissioner an annual nonrefundable fee of [$1,500.00] on the date of filing written notice and every year thereafter." 85A O.S. Supp. 2013 202(B).

25. 85A O.S. Supp. 2013 209.

26. I discuss the Texas opt-out system to emphasize the fact that employers who completely opt out of the state workers' compensation system are subject to tort liability in a court system and no longer retain exclusive remedy protections. Whether a system similar to the Texas opt-out system is constitutional under the Oklahoma Constitution is an open question and not the question before the Court in this case.

date that employers provide any particular benefits." Id. "Congress' goal in passing ERISA was to replace the patchwork of state laws governing this area with a uniform body of federal law," and "[o]ne of the tools Congress placed into ERISA to accomplish this goal was a preemption provision." Noyola v. Oasis Car Wash, Inc., 220 F.Supp.2d 638, 641 (E.D. Tex. 2002). ERISA preempts "'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." Shaw, 463 U.S. at 91, 103 S.Ct. 2890 (emphasis added).

¶ 8 In the case before us, the Dillard's employee benefit plan at issue is an ERISA plan. Dillard's asserted before the Commission that its employee benefit plan is a plan governed by ERISA because it includes both occupational benefits, as required by the OEIBA, and non-occupational death benefits for employees injured while off the job.[27] The Commission specifically found that the Dillard's plan is an ERISA plan.[28] When Dillard's removed this case to federal court, it argued that the plan is an ERISA plan and governed by such because it "is a multi-benefit plan providing for enhanced benefits" citing ERISA 4(b)(3) and 29 U.S.C. 1003(b)(3).[29] The Dillard's plan falls under the definition of an "employee welfare benefit plan" because it is a plan established or maintained for the purpose of providing participants or beneficiaries medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, or death.[30] In addition, Dillard's is the sponsor, administrator, and fiduciary for the Dillard's plan (all terms specifically defined by ERISA),[31] and Dillard's denial of Respondent Vasquez's claim in this case was "in accordance with ERISA Claim Regulations" under 29 C.F.R. 2560.503–1.[32] Finally, Respondent Vasquez filed her claim "'seeking to enforce her rights under the terms of the Dillard's Plan, and to clarify her rights to future benefits under the terms of the Dillard's Plan,' which tracks the express language of ERISA's civil enforcement provision."[33]

¶ 9 In addition, 211(B)(5) of the OEIBA indicates the Legislature intended for *all* employee benefit plans to be ERISA plans in order to comply with the OEIBA. Section 211(B)(5) of the OEIBA directs that in an appeal from an adverse benefit determination, "[t]he Commission en banc shall act as the court of competent jurisdiction under 29 U.S.C.A. Section 1132(e)(1), and shall possess adjudicative authority to render decisions in individual proceedings by claimants to recover benefits due to the claimant under the terms of the claimant's plan, to enforce the claimant's rights under the terms of the plan, or to clarify the claimant's rights to future benefits under the terms of the plan."[34] Sec-

27. Record on Appeal at 251.

28. Id.

29. Record on Appeal at 101.

30. Section 1002 of ERISA defines an "employee welfare benefit plan" broadly to include:
[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
29 U.S.C. 1002.

31. Record on Appeal at 104.

32. Record on Appeal at 105.

33. Record on Appeal at 101.

34. 85A O.S. Supp. 2013 211(B)(5). Section 211(B)(5) was amended in 2015 to provide:

5. If any part of an adverse benefit determination is upheld by the committee, the claimant may then file a petition for review with the Commission within one (1) year after the date the claimant receives notice that the adverse benefit determination, or part thereof, was upheld. The Commission shall appoint an administrative law judge to hear any appeal of an adverse benefit determination as a trial de novo. The Commission shall prescribe additional rules governing the authority and responsibility of the parties, the administrative law judge and the Commission during the appeal processes. The administrative law judge and Commission shall act as the court of competent jurisdiction under 29 U.S.C.A. Section 1132(e)(1), and shall possess adjudicative authority to render decisions in individual proceedings by claimants to recover benefits due to the claimant under the terms of

tion 1132(e)(1) of Title 29 of the United States Code, as referenced above in 211(B)(5) of the OEIBA, is the civil enforcement provision of ERISA that allows a participant in an ERISA plan to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[35] **Under 1132(e)(1), an action brought to recover benefits under**

> the claimant's plan, to enforce the claimant's rights under the terms of the plan, or to clarify the claimant's rights to future benefits under the terms of the plan[.]
> 85A O.S. Supp. 2015 211(B)(5).

**35.** 29 U.S.C. 1132(a)(1)(B).

**36.** Section 1132(e)(1) provides in its entirety:
(e) Jurisdiction
(1) Except for actions under subsection (a)(1)(B) [to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan] of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
29 U.S.C. 1132(e)(1).

**37.** The practical effects of ERISA preemption in this case cannot be understated. Amicus Curiae in this case summarizes such effects as follows:
[O]nce a 'qualified' employer's Benefit Plan is approved under 203 as an ERISA Benefit Plan, **the State is completely preempted from exercising any authority over the design, documentation, implementation, administration, or funding of the ERISA Benefit Plan relating to on-the-job injuries sustained by Oklahoma citizens....** Thus, ERISA cannot be used to force Benefit Plans to provide injured workers the same benefits as mandated by the AWCA.
. . . .
**Once an ERISA Benefit Plan satisfies 203, state authority terminates.** ERISA Benefit Plans would have unfettered 'discretion' to impose significant restrictions and limitations on claims. **Disputes which are the subject of an ERISA Benefit Plan could be subject to federal court jurisdiction, as provided by ERISA, with a standard of review that is inferior to that for the claim of an injured worker whose employer has not opted-out....**
AIA, PCI and NAMIC's, Amicus Curiae Brief in Support of Respondent, Vasquez, and in Favor of Affirmance at 5; 8 (citing Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1263, 1269 (10th Cir. 2002)) (emphasis added).

**an ERISA plan may <u>only</u> be brought in a federal district court or a state court of competent jurisdiction.**[36]

### *The OEIBA is not Preempted by ERISA*

¶ 10 Because the Dillard's Plan is an ERISA plan, the OEIBA is subject to preemption by ERISA.[37] If ERISA preempts the OEIBA,[38] this Court does not have jurisdiction to decide the constitutional issues

**38.** Other scholarship explains the consequences of ERISA preemption as follows:

> Because ERISA itself does not contain any *substantive* requirements for benefit levels—it merely requires that plans deliver what they promise to deliver—ERISA preemption is substantively empty. *Handling payment of benefits under an ERISA plan means that employers would in effect be released from complying with any state-mandated substantive level of workers' compensation benefits.* While an alternative plan *might* provide benefit levels that are substantively commensurate with state levels, it would not be required to do so as a matter of law. In effect, a previously mandatory benefit—one that was provided in exchange for relinquishment of tort rights—will have been converted to a discretionary benefit of the type ERISA was meant to regulate.
> Michael C. Duff, Are Workers' Compensation "Alternative Benefit Plans" Authorized by State Opt–Out Schemes Covered by ERISA?, 45 Brief 22, 23 (Spring 2016) (emphasis added).

The Commission concluded that the Dillard's plan in this case is an ERISA plan, but because the plan "include[d] non-occupational death benefits, in addition to the benefits required under Section 203 of the Opt–Out Act, it does not fall within the ERISA exemption for plans 'maintained solely for the purpose of complying with applicable ... workmen's compensation laws....'" Record on Appeal at 251.
The Commission's order recently issued in In re Claim of: Alexis L. Foster, CM–2016–01539K, and filed as supplemental authority in this case, sheds further light on the Commission's interpretation of ERISA as it applies in this case. In Foster, the Commission concluded that "[b]ecause a state cannot regulate an ERISA Plan, the Commission was not free to re-write Dillard's Plan by removing the offending definitions, which were authorized by the unconstitutional provision of the Opt–Out Act. Nor could the Commission decide the case on the basis of its re-writing of the Plan." Submission of Supplemental Authority, In re Claim of: Alexis L. Foster, CM–2016–01539K, Commission Order at 4. But the consequences of ERISA preemption are much more far-reaching. If ERISA preempts the OEIBA, the Legislature cannot, among other mandates, require an alternative benefit plan to provide for payment of the same *forms* of benefits included in the AWCA. If ERISA preempts

presented in this case because Respondent Vasquez's only recourse to recover benefits due her under the terms of the Dillard's plan was by filing an action *in a federal district court or a state court of competent jurisdiction, not in the Commission.*[39] This Court would have jurisdiction to decide the issues in the case but only in a perfected appeal from a state district court.[40] However, as I discuss below, the OEIBA is not preempted by ERISA, and the issues in this case can be reviewed by this Court in an appeal pursuant to 85A O.S. Supp. 2013 211(B)(7). I agree with the majority that the Commission only had the power to strike down the OEIBA as it was unconstitutionally applied to Respondent Vasquez in this case.[41]

¶ 11 ERISA preempts "'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered *by* ERISA." Shaw, 463 U.S. at 91, 103 S.Ct. 2890 (emphasis added). Thus, under ERISA, a benefit plan must be a "covered employee benefit plan" for preemption to apply. See Dist. of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). "Congress [has] explicitly exempted state workers' compensation schemes from ERISA's purview, leaving intact the states' traditional regulation and oversight of this specialized system of insurance." Combined Mgmt. Inc. v. Superintendent of Bureau of Ins. of State of Me., 22 F.3d 1, 4 (1st Cir. 1994) (internal citations omitted). Thus, certain ERISA plans are exempt from ERISA coverage if the plans are "maintained *solely for the purpose of complying with applicable workmen's compensation laws* or unemployment compensation or disability insurance laws."[42]

---

the OEIBA, the Legislature cannot provide exclusive remedy protections to employers who adopt such alternative benefit plans, and the Legislature cannot mandate that an opt-out employer provide minimum appeal rights, including an appeal to the Commission. In all likelihood, if ERISA preemption applies, the Legislature cannot require qualified employers to register their employee benefit plans with the state Insurance Commissioner or comply with any rules promulgated by the Commissioner regarding such registration compliance.

39. The Legislature's attempt to make the Commission a "court of competent jurisdiction" under ERISA's civil enforcement provision found in 29 U.S.C. 1132(e)(e)(1) is invalid. In enacting the AWCA, the Legislature repealed Title 85—the previous Workers' Compensation Code, which created and authorized the Workers' Compensation Court to function as a court of record. However, the Workers' Compensation Court was never a court of general jurisdiction and only had jurisdiction to hear and decide cases involving work-related injuries. The Commission remains a body with limited jurisdiction. Administrative law judges appointed by the Commission replaced Article 7 judges serving on the Workers' Compensation Court. See 85A O.S. Supp. 2013 19; 27; 400. The Commission and its administrative law judges have only quasi-judicial power consistent with any other administrative agency. More importantly, the expressed intent of the AWCA was to replace the Workers' Compensation Court, a court of record, *with an administrative system.* Provisions throughout Title 85A make clear that the Commission is an executive branch agency for all purposes and is not a court (with the full power of the judiciary) under any circumstances. Section 19(A) of the AWCA creates the Workers' Compensation Commission, which is "an executive agency of the State of Oklahoma...." 85A O.S. Supp. 2013 19(A). Section 201 of the OEIBA specifically provides that the "'Commission'" when referred to in the OEIBA, "means the Workers' Compensation Commission *under the Administrative Workers' Compensation Act.*" 85A O.S. Supp. 2013 201(A)(2) (emphasis added).

40. The Commission is not an intermediate appellate court established by the Legislature under Art. 7, 1 of the Oklahoma Constitution for any purpose.

41. The Commission did not have the power to declare the OEIBA facially unconstitutional in the case before us. See Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, ¶ 15, 371 P.3d 477, 484.

42. 29 U.S.C. 1003(b)(3) (emphasis added). Section 1003 of Title 29, entitled "Coverage," provides in part:

(b) The provisions of this subchapter shall not apply to any employee benefit plan if—
(1) such plan is a governmental plan (as defined in section 1002(32) of this title);
(2) such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of Title 26;
(3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws;
(4) such plan is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens; or
(5) such plan is an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded.

¶ 12 Federal courts in Texas are the only courts that have addressed whether an employee benefit plan written to allow an employer to "opt out" of the state's workers' compensation system is an employee benefit plan "covered by ERISA" or whether the employee benefit plan falls within the exception to preemption reserved for state workers' compensation plans.[43] In Hernandez v. Jobe Concrete Products, Inc., 282 F.3d 360 (5th Cir. 2002), an employee injured his back in the course and scope of his employment. After he returned to work he alleged he was required to perform difficult manual labor in contravention of his doctor's instructions and was forced to quit as a result. He sued his former employer in state court for unlawful retaliation, negligence, breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. Employer removed the case to federal court alleging that the employee's state law claims were preempted by ERISA because his claims related to an employee benefit plan. The district court dismissed the case, and on appeal, the U.S. Court of Appeals for the Fifth Circuit found that under the Texas workers' compensation system, the employer was a "nonsubscriber" because the employer had elected not to carry insurance coverage under the TWCA, and instead, had elected to adopt its own occupational injury plan to cover on-the-job injuries. *The court concluded that because employers, under Texas law, were not required to carry workers' compensation insurance of any kind, the employer's decision to adopt its own plan was not a decision clearly required by Texas law.* Id. at 364. The court held that "[b]ecause the exemption in [29 U.S.C.] 1003(b) was designed to allow states to control their workers' compensation schemes, it should not apply where a 'state voluntarily cede[d] control over certain plans by allowing employers to exist outside of the workers' compensation system.'"[44]

¶ 13 Hernandez is clearly distinguishable because unlike in Texas, compliance with either the AWCA or the OEIBA in Oklahoma is **mandatory.**[45] Employers in Oklahoma must provide workers' compensation coverage through either the AWCA or through an employee benefit plan written to comply with the OEIBA. An employer, under Oklahoma law, cannot choose to exist completely outside of the workers' compensation system by providing no coverage at all for work-place injuries as is the case in Texas. Thus, an employee benefit plan written to comply with the OEIBA is a plan that *must necessarily* be maintained in order to comply with Oklahoma workers' compensation laws.[46]

29 U.S.C. 1003(b) (emphasis added).

**43.** As discussed above, prior to Oklahoma, Texas is the only state to have enacted an opt-out system. As one scholar has noted, however, the cases decided by the federal courts in Texas arose in a period in which there was no sense that alternative plans might threaten to supplant traditional workers' compensation systems. In effect, different questions were being answered than the one being ask now. Will alternative benefit plans systematically deprive injured workers of adequate benefits for work-related injuries, thereby creating the potential for federal involvement in an area that has historically been *exclusively* a matter of state regulation? Alternative plans create the potential for shifting costs through undercompensation of workplace injuries by less generous private plans to federal programs, and may additionally transfer disputes over the compensability of workplace injuries to federal courts.
Duff, supra note 38, at 23–24.

**44.** Id. See also Rojas v. DAJ Enter. Inc., 2001 WL 682223, at *3 (W.D. Tex. 2001) (concluding that "[i]n constructing a workers' compensation scheme that offers employers a choice between choosing to subscribe to workers' compensation insurance and choosing not to do so, the Texas scheme foregoes the standard mandatory workers' compensation system"); Guilbeaux v. 3927 Found. Inc., 177 F.R.D. 387, 393 (E.D. Tex. 1998) (concluding that·"[i]f an employer is allowed to operate outside of the workers' compensation system, as employers in Texas are allowed to do, claims against those employers are left to the courts," and "[t]hus, the State of Texas has fashioned its workers' compensation scheme in such a way as to forgo control over injury or disability claims lodged against non-subscribing employers").

**45.** Section 210 of Title 85A provides that "[a]n employer who is not a qualified employer [under the OEIBA] **shall** comply with the provisions of the [AWCA]." 85A O.S. Supp. 2013 210 (emphasis added).

**46.** Two federal district courts in Texas have held that whether or not an employer opted into the TWCA, such choice was made solely to comply with the TWCA, and therefore, ERISA preemption did not apply, providing additional support for the conclusion ·that the OEIBA is not preempted by ERISA. See·Walker v. Health Benefit Mgmt. Cost Containment, Inc., 860 F.Supp.

¶ 14 In addition, Oklahoma's opt-out system does not relinquish control of work-place injury claims to the courts. Employers who opt out under the OEIBA continue to maintain exclusive remedy protections, and employees are specifically precluded from bringing negligence or other causes of action against their employers in the court system. In addition, the Commission, *not the state or federal courts*, continues to exercise jurisdiction over work-place injury claims. The inclusion of 211(B)(5) of the OEIBA[47] provides additional evidence that Oklahoma's opt-out system is not a true opt-out system. The Legislature cannot declare in one portion of the OEIBA that employee benefit plans are ERISA plans subject to the civil enforcement provision of ERISA and ERISA preemption, yet in another portion of the OEIBA, dictate that employers must follow certain procedures in administering such plans and continuing to subject employers to the jurisdiction of the Commission. Thus, the OEIBA continues to reflect the type of workers' compensation laws traditionally exempted from ERISA coverage.

¶ 15 Finally, the state of Oklahoma continues to exercise control over employers who adopt employee benefit plans pursuant to the OEIBA. Although 203 of the OEIBA provides that no provision of the AWCA defining covered injuries or medical management shall apply, that same section also *requires* opt-out plans to include certain forms of benefits on a no-fault basis with "dollar, percentage, and duration limits that are at least equal to or greater than the dollar, percentage, and duration limits" found in the AWCA.[48] Additionally, although 202 of the OEIBA provides that "neither the Workers' Compensation Commission, the courts of this state, or any state administrative agencies shall promulgate rules or any procedures related to design, documentation, implementation, administration or funding of a qualified employer's benefit plan," 202 also requires qualified employers to register their employee benefit plans with the state Insurance Commissioner and to comply with any rules promulgated by the Commissioner regarding such registration compliance.[49] Section 204 also requires a qualified employer to either "self-fund or insure benefits payable under the benefit plan," and mandates an employer to "secure compensation to covered employees."[50]

¶ 16 "Congress' intention in crafting the 1003(b)(3) exemption was to allow states to keep control over their workers' compensation systems."[51] Because the state of Oklahoma continues to exercise control over the workers' compensation system and does not allow employers to exist completely outside of that system, the exemption from ERISA

---

1163 (N.D. Tex. 1994); Foust v. City Ins. Co., 704 F.Supp. 752 (W.D. Tex. 1989).

47. Section 211(B) provides in relevant part:
The benefit plan shall provide the following minimum appeal rights:
5. If any part of an adverse benefit determination is upheld by the committee, the claimant may then file a petition for review with the Commission within one (1) year after the date the claimant receives notice that the adverse benefit determination, or part thereof, was upheld. The Commission shall appoint an administrative law judge to hear any appeal of an adverse benefit determination as a trial de novo. The Commission shall prescribe additional rules governing the authority and responsibility of the parties, the administrative law judge and the Commission during the appeal processes. The administrative law judge and Commission shall act as the court of competent jurisdiction under 29 U.S.C.A. Section 1132(e)(1), and shall possess adjudicative authority to render decisions in individual proceedings by claimants to recover benefits due to the claimant under the terms of the claimant's plan, to enforce the claimant's rights under the terms of the plan, or to clarify the claimant's rights to future benefits under the terms of the plan....
85A O.S. Supp. 2013 211(B)(5).

48. 85A O.S. Supp. 2013 203.

49. 85A O.S. Supp. 2013 202.

50. 85A O.S. Supp. 2013 204.

51. Guilbeaux, 177 F.R.D. at 393–94. Congress also expressed its intent to keep federal courts out of state workers' compensation systems by preventing removal of "[a] civil action in any State court arising under the workmen's compensation laws of such State...." 28 U.S.C. 1445(c). In the case before us, Dillard's attempted to remove this case to federal court. The federal court specifically relied on this provision in remanding this case to the Commission, finding that "the O[EI]BA is part of Oklahoma's statutory scheme governing occupational injuries and workplace liability; in other words, the O[EI]BA is part of Oklahoma's statutory scheme governing workmen's compensation." Record on Appeal at 122.

coverage continues to apply. The Dillard's plan in this case was maintained solely for the purpose of complying with Oklahoma's workers' compensation laws under 29 U.S.C. 1003(b)(3), and ERISA preemption does not apply.

### The OEIBA is Unconstitutional

¶ 17 "Article V, section 46 [of the Oklahoma Constitution] is an unequivocal mandate to the Legislature. Under no circumstances is the Legislature allowed to pass a special law regarding one of the subjects listed in section 46." Lafalier v. Lead–Impacted Cmtys. Relocation Assistance Trust, 2010 OK 48, ¶ 26, 237 P.3d 181, 192. Included within the list of subjects is a prohibition against "[r]egulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, *commissioners*, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate." Okla. Const. art. 5, 46 (emphasis added).

¶ 18 "*In a 46 attack, the only issue to be resolved is whether a statute upon a subject enumerated in that section targets for different treatment less than an entire class of similarly situated persons or things.*" Zeier v. Zimmer, 2006 OK 98, ¶ 11, 152 P.3d 861, 866 (citing Reynolds v. Porter, 1988 OK 88, 760 P.2d 816). "The terms of art. 5, 46 command that court procedure be symmetrical and apply equally across the board for an entire class of similarly situated persons or things." Id., ¶ 13, 152 P.3d at 867. "The test is whether the provision fits into the structured regime of established procedure as part of a symmetrical whole. If an enactment injects asymmetry, the 46 interdiction of special law has been offended." Id.

¶ 19 In the case before us, the class of similarly affected persons is injured workers, and the AWCA establishes generally applicable procedures for awarding benefits to such workers. An injured worker proceeding under the AWCA would be subject to the following procedures governing the adjudication of benefits. Under the AWCA, an employee must report an injury to his or her employer within 30 days.[52] Claims for compensation are heard by an administrative law judge who "shall hold a hearing on application of any interested party, or on its own motion." 85A O.S. Supp. 2013 71(B). At the hearing, "the claimant and the employer may each present evidence relating to the claim," and the evidence may include verified medical reports which shall be accorded such weight as may be warranted when considering all evidence in the case." 85A O.S. Supp. 2013 71(C)(1). The administrative law judge "shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence." 85A O.S. Supp. 2013 71(C)(1)(b)(2). An injured worker may appeal the decision of an administrative law judge to the Commission. After holding a hearing, the Commission "may reverse or modify the decision only if it determines that the decision was against the clear weight of the evidence or contrary to law." 85A O.S. Supp. 2013 78(A). Although an injured employee and his or her employer may settle the case at any time, they must "file a joint petition for settlement with the Commission." 85A O.S. Supp. 87. Such joint petition must be "approved by the Workers' Compensation Commission or an administrative law judge," and "[a]n official record shall be made by an official Commission reporter of the testimony taken to effect the Joint Petition." 85A O.S. Supp. 2013 115.

¶ 20 In stark contrast, an injured worker proceeding under the OEIBA, and the Dillard's plan specifically, is subject to the following procedures governing the adjudication of benefits. Under the Dillard's plan, an injured employee must report an injury by the end of his or her work day. Administrative Record at 181. All claims are initially decided by a company-designated claims administrator. No hearing of any kind is held by the claims administrator regardless of whether

---

52. Form CC–Form–1A provides that "[u]nless oral or written notice is given to the employer within thirty (30) days, the claim for compensation may be forever barred." Forms, Oklahoma Workers' Compensation Commission, https://ok. gov/wcc/Forms/index.html (last visited Aug. 18, 2016). Section 69 of the AWCA provides that a claim for compensation must be filed with the Commission "within one (1) year from the date of injury." 85A O.S. Supp. 2013 69(A)(1).

the injured worker seeks an "urgent or non-urgent" "pre-service claim for medical benefits" or whether the injured worker seeks a "post-service medical benefit, disability benefit, disfigurement benefit, occupational death benefit or non-occupational death benefit claim." Administrative Record at 191–93. The claims administrator is only required to "provide a written or electronic notice to the claimant" notifying him or her of any adverse benefit determination.[53]

¶ 21 An injured employee may appeal an adverse benefit determination by the claims administrator to an appeals committee, which is a committee comprised of individuals selected by the company. Administrative Record at 149; 166. The injured worker may "submit written comments, documents, records, and other information relating to the claim for benefits," and may request "reasonable access to, and copies of, all documents, records, and other information that is [r]elevant to the claimant's claim for benefits (as determined by the Appeals Committee)." Administrative Record at 195. But again, the appeals committee holds no hearing and is only required to "provide notice to the claimant ... of the Plan's benefit Determination...."[54]

¶ 22 The Dillard's plan also provides that "[e]very interpretation, choice, determination, or other exercise by the Claims Administrator or Appeals Committee of any power or discretion ... shall be given the maximum deference provided by law and shall be conclusive and binding upon all parties having or claiming to have an interest under the Plan...." Administrative Record at 188. Fi-

nally the Dillard's plan provides that the appeals committee shall have final authority regarding any decision made with respect to the administration of the plan and that "[t]here shall be no de novo review by any arbitrator or court of any decision rendered by the Appeals Committee and any review of such decision shall be limited to determining whether the decision was so arbitrary and capricious as to be any abuse of discretion." Id. Although the OEIBA allows an injured worker to appeal an adverse benefit determination to the Commission, the Commission can only "rely on the record established by the internal appeal process" and "[a]ny award by the administrative law judge or Commission shall be limited to benefits payable under the terms of the benefit plan...."[55]

¶ 23 In addition, at any time during the claims process, the claims administrator can perform a claim evaluation and demand a final claim settlement which releases the company from "any further known and unknown benefit and all other injury-related claims." Administrative Record at 187. If an injured worker refuses to accept the claims administrator's demand and unilateral final claim evaluation, "no further benefits will be payable" and the worker has no further recourse. Id.

¶ 24 The OEIBA is an impermissible special law because the procedures governing the adjudication of benefits under the OEIBA differ significantly from the procedures governing the adjudication of benefits under the AWCA.[56] And again, because employers are not truly allowed to opt out of the work-

---

53. Administrative Record at 193. The notice of adverse benefit determination must include certain requirements including, among other requirements, "a description of the Plan's review procedures," and the "specific reason or reasons for the Adverse Benefit Determination." Administrative Record at 194.

54. Administrative Record at 195. As discussed above, the OEIBA requires the Dillard's Plan to provide such "minimum appeal rights." See 85A O.S. Supp. 2013 211(A–B).

55. 85A O.S. Supp. 2013 211. Although 211 was amended in 2015 to allows the Commission to "appoint an administrative law judge to hear any appeal of an adverse benefit determination as a trial de novo," the Commission is still limited to

relying on "the record established by the internal appeal process" and is "limited to benefits payable under the terms of the benefit plan ...." 85A O.S. Supp. 2015 211(A–B). If the Commission and the appointed ALJ are limited to relying on the record established by the internal appeal process, then the trial de novo is not actually a trial de novo.

56. Dillard's specifically acknowledges that the purpose of the opt-out act was to provide employers with the freedom to create and manage workers' compensation benefits and to *allow employers to "set procedure for reviewing claims* and provid[e] coverage that is tailor-made to an employer's unique work environment." Petitioner Dillard's, Inc.'s Brief–in–Chief at 25 (emphasis added):

ers' compensation system and *remain subject to the jurisdiction of the Commission,* such differential treatment cannot withstand the constitutional prohibitions of art. 5, 46. The OEIBA is an unconstitutional special law.[57]

### Severability

¶ 25 Dillard's has requested that if the Court finds the OEIBA unconstitutional, any unconstitutionality be remedied by striking 209(A), the exclusive remedy provision of the OEIBA. Dillard's argues that striking exclusive remedy would allow employees, whose employers have opted out, to seek recourse for workplace injuries through private causes of action in the court system. But 213 of the OEIBA—the Invalidity Clause—specifically provides that if "this act, or any part thereof, is declared unconstitutional or unenforceable, it is specifically intended that ... [t]he rights and obligations of a qualified employer and its employees shall be subject to the exclusive remedy provisions of Section 5 of [the AWCA]...."[58] The Legislature has clearly expressed its intent to <u>not</u> allow workers' compensation claims to be adjudicated in the courts if the OEIBA is found unconstitutional. In addition, we cannot presume the Legislature would have enacted the remaining pro-

visions of the OEIBA were this Court to sever all of its invalid portions.[59] Thus, the only remedy is to strike the OEIBA in its entirety.[60] Injured employees are not left without a remedy because under 213 employers who have "opted-out" must still provide workers' compensation benefits to their employees to the extent the employer "would be liable to employees in compensation for such injuries under the [AWCA]."[61]

### Conclusion

¶ 26 Workers' compensation "is a mutual compromise in which the employee relinquishes his/her right to sue for damages sustained in job-related injuries[,] and the employer accepts no-fault liability for a statutorily prescribed measure of damages." <u>Evans & Assocs. Utility Srvcs. v. Espinosa,</u> 2011 OK 81, ¶ 14, 264 P.3d 1190, 1195. "[W]orkers' compensation statutes were designed to provide the ***exclusive remedy*** for accidental injuries sustained during the course and scope of a worker's employment...." <u>Parret v. UNICCO Serv. Co.,</u> 2005 OK 54, ¶ 8, 127 P.3d 572, 575 (emphasis added). ***"[E]xclusivity*** is at the heart of the essential Grand Bargain between employers and employees ... [and] is workers' compensation."[62]

---

**57.** The above discussion refers only to the *procedural* differences between the AWCA and the Dillard's plan. The difference in substantive benefits is also striking. <u>See</u> Respondent's Brief–in–Chief at 6–8.

**58.** <u>85A O.S. Supp. 2013 213</u>(B).

**59.** <u>See</u> <u>Douglas v. Cox Ret. Props., Inc.,</u> 2013 OK 37, ¶ 12, 302 P.3d 789, 794.

**60.** No changes were made to the OEIBA during either the 2014 or 2016 legislative sessions. In 2015, the Legislature amended 203, 205, and 211 of the OEIBA. <u>See</u> 2015 Sess. Laws 1565–1570. The amendment to 203, which concerns information submitted to the Insurance Commissioner as part of the application for approval as a qualified employer, does not affect the core provision of 203. The amendment to 205 appears only to have corrected a typo, and thus, is procedural. The amendment to 211, which changed the appeal process and the standard of review, does not apply to Respondent Vasquez in this case because the standard of review applicable to workers' compensation cases is that which is in effect when the claim accrues. <u>Williams Cos. v. Dunkelgod,</u> 2012 OK 96, ¶ 18, 295 P.3d 1107, 1113. However, the amendment to the appeal process and standard of review in 211 does not cure the

constitutional deficiencies found in the OEIBA. The core provisions of the OEIBA have remained substantively unchanged since its enactment in 2013. The OEIBA is unconstitutional in its entirety. Any amendment made to the statue in 2015 is likewise void. <u>See</u> Poafpybitty v. Skelly Oil Co., 1964 OK 162, 394 P.2d 515, 518 ("Amendments are to be construed together with the original act to which they relate as constituting one law, and also together with other statutes on the same subject as part of a coherent system of legislation.").

**61.** <u>See</u> 85A O.S. Supp. 2013 213(B)(3) ("To the extent this act, or any part thereof, is declared to be unconstitutional ... an employer that becomes a qualified employer under this act shall be liable for injury to employees only to the extent to which an employer that complied with the provisions of the [AWCA] would be liable to employees in compensation for such injuries under the [AWCA]."). <u>See also</u> 85A O.S. Supp. 2013 213(B)(4) of the OEIBA (allowing qualified employers 90 days "from any final decision declaring this act or any part thereof unconstitutional to secure compliance with the Administrative Workers' Compensation Act").

**62.** Duff, <u>supra</u> note 38, at 24 (emphasis added).

¶ 27 "[T]his Court has long recognized that the protection of employees from the hazards of their employment is a proper subject for legislative action...." Coates v. Fallin, 2013 OK 108, ¶ 2, 316 P.3d 924, 925. The Legislature, in exercising such power, is free to eliminate the workers' compensation system entirely, abolish exclusive remedy protections for employers, and leave work-place injury claims to the courts. However, the Legislature is not free to substantially reduce benefits for some injured workers under the guise of an "opt-out" system and force such injured workers to remain within the system through the use of exclusive remedy. I concur with the majority that the OEIBA is unconstitutional in its entirety.

WINCHESTER, J., with whom Taylor, J., joins, dissenting:

¶ 1 I respectfully dissent. The majority opinion emphasizes that statutory provisions are presumed constitutional, that the Court's function isn't to correct the Legislature, and that the Court should rule on the narrowest grounds possible. Unfortunately, the majority's result violates all three of these basic tenets. Neither the majority or concurring opinions, nor the Commission set forth or address the specific facts in this case, a simple undertaking which would allow the Court to make a narrow ruling that preserves the integrity of the Opt Out Act and avoids a resort back to the traditional system the Legislature sought to avoid.

¶ 2 At the heart of this case was whether Vasquez, the employee, should receive benefits for a preexisting condition. In September, 2014, Vasquez injured her shoulder/upper neck while at work for Dillard's. Dillard's provided coverage for most of her treatment under Dillard's Plan. Vasquez submitted a claim for an MRI in September, 2015. Dillard's sought the opinions of two doctors to review Vasquez's medical files and they determined her injury was the result of a preexisting condition. Dillard's denied the claim under the Plan and informed Vasquez of her right to appeal, which she did. The appeal went before Dillard's Appeals Committee and an independent medical examination of her file was performed. That opinion also found Vasquez's claim should be denied as her injury was both a preexisting condi-

tion and a degenerative injury. Vasquez then appealed to the Workers' Compensation Commission. Rather than addressing the facts of the case, the Commission went straight to the heart of the Opt Out Act and ruled that it was facially unconstitutional. Dillard's appealed to this Court but the majority, like the Commission, skirted the facts in its mission to find the entire Opt Out Act an unconstitutional, special law.

¶ 3 I would not strike the Opt Out Act but, instead, I would require the Commission to determine whether, under the facts presented, the employee was denied benefits under the Dillard's plan that she otherwise would have received under the Administrative Workers' Compensation Act. If the employee would not have been entitled to benefits under either system, as urged by Dillard's, then this becomes a much more straightforward review of a denial of benefits. I have no trouble concluding that if specific sections of Dillard's plan do not meet the requirements of the Opt Out Act then those provisions should be brought in line with the Act, as should any other plan that fails to meet such standards. However, the majority fails to narrowly tailor its ruling and instead, with a broad sweep of its brush, erases the entire Opt Out Act, leaving employees and their employers without a clear path to enforce their respective remedies or defenses.

¶ 4 The validity of Vasquez's claim was never entertained. Because the Administrative Workers' Compensation Act also prohibits recovery for preexisting and/or degenerative conditions, 85A O.S.2013 2(9)(b)(1), 2(9)(b)(6), 36, it appears that both Acts would have denied her claim. Instead of ruling on these narrow, factual grounds, the majority unnecessarily ventures into the constitutionality of the Opt Out Act and improperly strikes it down based upon hypothetical events.

¶ 5 As I have said in previous cases, legislation requires some compromise and with a system as complex and comprehensive as workers' compensation, this Court should adopt a more deferential, case-by-case approach. All new legislation needs fine-tuning, either by legislative amendment or court direction. Here, the Court has provided no guidance for employees, or their employers,

as to where a cause of action should be pursued if the Opt Out Act ceases to exist. Further, other employers with plans under the Opt Out Act that have met or exceeded the Acts' terms will never get the opportunity to have the validity of their plans tested. I would remand the matter for determination on the factual issues before resorting to wiping out the Opt Out Act.